Thank you, Your Honor. I'm Attorney Scott Hubbard. I'm representing the plaintiff, Brenda Pickering. Unless the Court has any questions, I'd like to reserve the rest of my time. I'm sure if you don't, you may. Thank you. And there's nothing to report. It kind of puts Pier 1 in a difficult position of rebutting nothing, but you may proceed how you wish. My own personal opinion, just so you know, that's a mistake, because we are kind of waiting for you to argue what you want to argue, and then she can respond. Do you just want to rest on the briefs completely? No, because Pickering or Pier 1 might say something that I'd like to address. But it's always been my experience that three circuit judges know the law far, far better than I ever will. And it's the facts that is the primary concern of the Court. So unless there is a factual answer, I'm sorry. Well, we may not have any questions for Pier 1, and they may decide that we can rest on the briefs because they're well done, and we understand the facts and the law. Your choice. I'd be happy to answer any questions that the Court does have about the briefs in this case. The briefs, I guess. There are basically just two issues in the case, the issue of whether or not Pier 1 could possibly have had an obligation to build a ramp over what's been referred to as the grassy strip or the grassy berm in this case, which the district court said it did not because it was not within the control of Pier 1, and the grassy strip is not part of the facility as defined under the ADA. So the district court felt that that issue was perfectly clear. If the Court has no questions on that issue, I'd like to turn to the issue that I think most of the briefing was done on, and that was the issue of the notice pleading. Now, you responded to the opening brief. Yes, we did. There was a reply to your response. Yes. Are you going to limit your comments to whatever was said in the reply brief that you feel needs clarifying? Yes, I will do that, Your Honor. The reply brief did talk about an issue concerning something called the preliminary report, and Pier 1 was not really given an opportunity to discuss this preliminary report. First, I would like to point out that the preliminary report was not an expert report. I think that the appellant's position here is that, in effect, they somehow filed an expert report and then supplemented it in the report that the district court said was late and was struck from the record. The preliminary report, first of all, was not mentioned during the summary judgment at all, so the district court did not get an opportunity to deal with this particular argument. The preliminary report is not part of the summary judgment record. In fact, it is only part of the appellate record that deals with the sanctions order. It is not part of the record in terms of a verified piece of evidence. In fact, the preliminary report that is referred to was never sworn to. The author is unknown. It is undated. And inconsistent with what the appellants have said in their reply brief and in their letter to this court, the preliminary report is not coterminant with the card declaration, the exports declaration. In fact, the exports declaration in this case that was struck contains many, many issues beyond what was in the preliminary report. What was the purpose of the preliminary report? The preliminary report was given to the Pier 1 attorneys as part of settlement discussions. And was never put into the record other than at the sanctions phase before the district court. And, you know, the parties did meet several times to try and work out their disagreements, and the preliminary report was used in that manner. So it served no other purpose that one can discern from the record here. The appellants also take the position in the reply brief that the reason that their expert was late in filing his report was because the plaintiffs or the defendant did not cooperate in the site inspection. That's really a gross misstatement of the record. The record shows that there was a request for site inspection. The Pier 1 filed a motion for protection because the site inspection procedures were overbroad, and the plaintiffs ended up withdrawing without comment their motion for site inspection. That was the status as of the date the expert report was due. After the expert report was due, the plaintiffs filed a motion to compel the site inspection. And, you know, at that point, the expert report would have already been late, but the Pier 1 offered to agree to allow the site inspection anyway. There was a disagreement about how it would occur. That eventually went to the magistrate. A site inspection was granted and did occur with some protections for Pier 1 in March of 2004. About a month later is when the card declaration was finally filed. None of these issues were presented as any kind of a sculpture position to the district court. The district court never considered these issues because they weren't argued to the district court. And, in fact, the record is pretty clear that Pier 1 in no way interfered with the timely, you know, exercise of the right to take an inspection because the plaintiff had withdrawn the initial request that was made for the inspection. Your Honor, there were some issues that were raised in the February 7th letter that the attorneys for Pickering filed with this court. The attorneys argued that somehow or another the district judge below had modified his decision through the White v. Divine case. There's an allegation that the complaint in both cases were exactly the same, although there's nothing in the record that would indicate that. But I would point out that in White v. Divine, Judge Damrell specifically states that he – that the issue before the court is not an issue of notice pleading under Rule 8, but, in fact, is an issue of Article 3 standing. So to the extent that the court goes on to make certain rulings in that case, it has to do with that court's opinion concerning standing and not the notice issues that are relevant in this case. I will also note that both in the reply brief and in the February 7th letter to this court, the appellant raises this issue of standing as if it is the same as the issue of notice pleading. The judge below decided this case on the notice pleading issue. Standing is relevant, if it is relevant at all, only to the extent that any of these claims, these new claims that were set forth by the card declaration, are actually allowed into consideration because some of them may, in fact, raise standing issues. But to argue a standing position before this court is inappropriate. The standing was not at issue in summary judgment. It was not at issue in the appellate briefing except for a footnote in the reply brief. And it's just a red herring. Standing, if it is applicable at all, is helpful to Pier 1. It is not an argument. The standing cases are not an argument against the district court's ruling on the notice issues. In the February 7th letter, the appellants also cite, bring this court's attention to the Duran v. Viacom case. In that case, the court states that, does state that there is nothing inherently wrong with boilerplate complaints. If the counsel has conducted an appropriate inquiry under Rule 11, this is all in the context of the attorneys in Duran who are also the attorneys here. The boilerplate issue in this case, is there? There is, I guess, an alternative position that the complaint itself was inadequate. And the court below did state that the complaint itself was inadequate, but went on to find that even if the complaint somehow could be read to encompass all of the issues that are now being raised, that the only competent evidence of those issues is the card declaration, which the court struck. There really is no, the problem isn't that there was a boilerplate complaint. The question is, what did the complaint include? How far can it be read or extended? Exactly. And we have a special problem in this case because the complaint, as was admitted by counsel for the appellants during the sanctions hearing, was hypothetical. In response to the court's questions about why the complaint contained allegations that were demonstrably false, that are admitted to be false, the attorney for the appellant stated that these were intended to be illustrative only and hypothetical only. So when you combine boilerplate nature with the hypothetical, admittedly hypothetical claims in the complaint, it's clear that the complaint cannot serve to, no matter how generalized you view it, to suffice and does not include the claims or fair notice to Pier 1 concerning the claims that are actually being raised in this case. In Duran, however, the plaintiffs in that case did file a very detailed affidavit that was timely and did file an amended complaint. The Wilson case that is also cited in the February 7th letter also involves a case where there was a very detailed affidavit that delineated the claims. And I would note in that case that the court specifically reserved for later decision the issue of whether or not the failure of the plaintiffs to file a motion to amend and to indeed amend their complaint to conform with the affidavit of issues that was discovered during discovery would have been, you know, would be something that interferes with their ability to make these claims. That issue was not decided in the Wilson decision that was cited to this court. And I would point out for the record that the Wilson decision decided or presented to this court is a January 2006 decision. There was subsequently a February 2006 decision from the same court that I think further clarifies the January decision and contains a footnote at footnote 1 that makes it clear that the court is not deciding this issue of whether or not a motion to amend would ever be required. As you may know, in this case, the case before the court, there was never a motion to amend the complaint. There was never a motion for permission to file a late expert report. So, you know, the to the extent that the plaintiff is claiming an excuse to any of its failings, there was never an attempt to correct those, and the court below never had an opportunity to consider whether there were mitigating factors that should have allowed an amended complaint or a later expert date. All right. Unless the court has any other questions, I think that's all the response we have to the reply specifically in the February letter. Thank you. Thank you. Looks like I'm going to have to speak a little longer than I anticipated. I'm going to jump around a bit. Forgive me. First, with respect to the question of whether or not what did the complaint include, everyone agrees that the complaint included claims based on the failure to remove architectural barriers at the facility. The district judge acknowledged that in its footnote. We also claim that the plaintiff was denied full and equal access in the complaint at the facility. That was also, we all agree on that. It's the scope of injunctive relief. The reason we don't have to plead specific barriers and specific ADAG violations is the specific barriers and the specific ADAG violations aren't what's at issue. What's at issue is the defendant's failure to make the facility readily accessible to and usable by the disabled. There's, if you go to 42 U.S.C. 12188A2, this is a very specific type of injunctive relief. Unlike A1, which deals with the denial of a plaintiff's right to full and equal enjoyment of a facility, A2 deals with the defendant's failure to remove architectural barriers from a facility. So when we included our complaint that the defendant failed to remove architectural barriers from the facility, whether or not he failed to remove this barrier or that barrier or that barrier over there is immaterial. What we are concentrating on is the defendant's failure under the ADA, not the specific evidence of the failure. I wanted to get that out of the way. That made no sense. Okay. Let me take a step back then. What didn't make sense about it? You're not complaining about the ADA, the specifics only about the failure of the ADA. I mean, you know, you're talking kind of in circles here, because the real problem is whether, having had a summary judgment motion, you can then come back and, in effect, you know, in a reply brief there after the fact and raise issues that weren't part of the original summary judgment. And you're saying you can't. I believe we raised them in cross motions for summary judgment, both in the ‑‑ forgive me, I'm trying to remember what was raised in which. We did a motion for summary judgment, and I think we also did a cross motion for summary judgment in ‑‑ What was the evidence in which you were lying? Well, we were lying ‑‑ The court of the expert was it, wasn't it? No. Actually, Brenda Pickering's declaration, which we also included in the excerpts of record, both in the further excerpts of record, also contained evidence of the denial of access. We also included ‑‑ Wait a minute. Wait a minute. All right. All right. Now, you're contending now something more than the failure to do something to create access across that 10-foot city grass area. That's it, isn't it? No, Your Honor. I'm still focusing on that issue. I thought the question was, was the card declaration the only evidence that we had in the record? That is my question, and I don't know of any other evidence from anyone else, and you're saying there is some. There is. We include in Brenda Pickering's declaration testimony regarding that that route isn't there. We include ‑‑ That route. But what else? We include a DVD which shows the route that other people can take if you can walk across the grassy knoll for 10 feet versus taking a 400-yard detour through traffic. What you were trying to include and now are trying to include is a whole bunch of other things other than just the route across that strip. There is no route across the strip. That's what the evidence. I know. We also included photos of other people who have ‑‑ and building records, which are judicially noticeable, of other people who have built ‑‑ That was the basic complaint, and now you're trying to, through an expert, say there are a whole bunch of other things in that area that didn't comply.  Are we talking about the initial complaint, the motion, the cross motion, the opening brief? Any of them. We had included that in all of it, except admittedly the complaint. Other than not providing something across the grass strip, what is there that you're contending? I'm on page 72 of the further excerpts of record. Ms. Pickering on page 73 describes the route of travel that she takes to get to the store. She talks about ‑‑ Stop. You know what? You're not answering the question. The question is, what are the additional claims other than that they didn't put a crossing so that there was a ramp? Are there any other claims that you're making, and what are they, and where do we find them? Fair enough. Forgive me. There's a local ‑‑ the Ninth Circuit says don't put pleadings in the certificate or the excerpts of record. They would probably just ‑‑ I will have to ‑‑ We have access to the entire record. You tell us where it is. We can find it. Okay. If you go to page 74 of the further excerpts of record, she talks about parking being inaccessible. She talks about the sidewalk in front of the store, not the sidewalk on East 20th Street, the sidewalk in front of the store being too steep. She talks about the slope in the parking being uneven, and it causes her van to deploy her at an odd angle. She talks about not having 12 inches of latch‑side clear space to open a door. Latch‑side clear space, if pointing to the door back there, that would be the door. If you're pulling the door open, you have to get with ‑‑ you have to have at least 12 inches to the side, to the right‑hand side of the doorknob so a person in a wheelchair can get close enough to open it. She talks about inaccessibility in the restroom with respect to boxes blocking the clear space. If she can't get into the restroom, if she can't ‑‑ well, if she can't get in, she can use them. Did you move for summary judgment on these issues? We did. We did cross motions. On each of these issues, parking, the door latches, sidewalk, the restroom? I believe so. I wouldn't have included them in the declaration if we weren't seeking to adjudicate them. What was that? I wouldn't have put them in the record before the district court if I wasn't seeking to adjudicate them. Well, that doesn't answer the question. Yes, I believe so. That was the specific issue in your original motion that was before the district court. I believe it was, yes. Separate ‑‑ Can you cite to us what part of your motion included that? I can't right now. Let me suggest this. We have a procedure. You can fax those pages to the clerk and to counsel for Pier 1, and we will then look at those. That would be acceptable. Or at least if that's acceptable for you, I'd be happy to do it. On that, you say you made a motion for summary judgment. Is there not a legitimate question of fact so that summary judgment would be inappropriate? I thought it was inappropriate for summary judgment to be appropriate for a lot of this. No, on your motion. I think on both motions. No, I'm talking about your motion. Yes, my motion is probably, well, with except, well, yes, because even ‑‑ All those things we were just mentioning about the door and so forth, those are all questions of fact, are they not? They are. So the granting a summary judgment in favor of your client would be improper? Yes, it would be. All right. Well, that kind of solves that problem. It does. And let me just ask you this. It's like your explanation of the case and the district court's decision are passing in the night, because the district court characterizes your motion as plaintiff's motion for summary adjudication as to the issue of defendant's liability for not constructing the access ramp. The court also ruled, if I can get to that ‑‑ Forgive me, I'm looking ‑‑ Plaintiff does not seek, this is in Excerpt of Record 69, plaintiff does not seek adjudication as to the remaining allegations in the complaint, but contends there's tribal issues of fact preventing dispositions for summary judgment. There is a passage in this order, I believe, that, or it could have been the order granting fees, that many of the barriers, he comes to the conclusion that many of the barriers plaintiff doesn't dispute that are moot or haven't been, or are moot or weren't factually based. So I believe that it was a difference of opinion. Okay. For lack of a better term. I mean, people, the court looked at this, the evidence we presented and believed that we weren't objecting to the fact that the barriers remained. I think that we were. He claimed that they were factually unsupported. I thought they were. He claimed that they were ‑‑ they had been mooted. I didn't think they were. And we had offered evidence suggesting otherwise. Which quite candidly, the defendant's main contention regarding barriers being removed was Michael Gibbons, their defense expert. But that defense expert was disclosed in the exact same manner mine was. They didn't ‑‑ they didn't include a written report for him. I'm no better than anyone, but I'm no worse either. So if they're turning in a defense expert that, or an expert disclosure that mirrors mine, it just includes a copy of his CV, what he's expected to testify to, and no disclosure, no written disclosure like the court asked for in Rule 16, then I can certainly ‑‑ Did you make a motion to that effect? We notified the court of that. We didn't want to make a ‑‑ Did you make a motion? No. Okay. Then there's nothing ruled on by the district court that's in front of us on appeal. Well, we didn't make a motion with the court because the ‑‑ because if the court were to grant our motion, the court would also have to strike our expert report. We notified the court. We objected to the court. There's a certain degree of equity involved. If the defense ‑‑ Is this issue on appeal? Yes. The issue ‑‑ As to the question of the defense expert? Is it on appeal? No, because the court, as you said, the court never ruled on the defense expert. Okay. Then it's not something that we're going to consider. But the court did rule on the striking of our expert, and one of the issues we did with respect to the striking of our expert was the fact that our expert disclosures were identical. Turning to facility, the defendants say in the very first minutes that there was no evidence of control, no evidence that the grassy strip wasn't part of the facility. As for evidence of control, we included photos of seven other defendants in the area, or, excuse me, seven other business owners in the area. A third of them asked the city for permission to add a ramp. The city granted it. A third of them didn't ask for ‑‑ We're on the ramp again, right? Now we're on the accessible route, yes. This is what's unfair about your making no argument, then waiting for a restricted argument by the appellee, and now you're bringing up all this other stuff about the ramp and so forth. I frankly think in fairness we should provide some time for your opponent to answer all these things that you're now arguing. We're going to, because she had reserved eight minutes. I would have been more than happy to just submit it if they didn't want to come up here and stand and argue. Why didn't you? They wanted, as I said before, I wanted to reserve the chance to discuss the matters that they brought up at oral argument. You know, it's really unfair to ‑‑ you have the burden here. You're the appellant, and the way you've postured it I think is unfair. I let you proceed, and now you're convincing me that I was probably wrong to let you sit it out the first round. Be that as it may, here we are, so please proceed. I mean, you're jumping all over the place. I can see why the district court couldn't figure out what's in or what's out, because we don't have really a coherent statement of what's on appeal and what the issues are. So are you now on the ramp? Is that ‑‑ Your Honor, first off, if the court would like to let the appellate ‑‑ No, keep proceeding. ‑‑ I'd be more than happy. No, it's not in your control. You may proceed. Fair enough. Second, this is a very complex issue. I mean, this involves multiple areas of statute interpretation, regulation. If I'm jumping around a lot, it's not intentional. It's just the way I took my notes. And I'm trying to limit my comments to everything that the defense brought up in their remarks. But if the court thinks I've overstepped the bound, I'd be happy to sit down now. Why don't you go ahead? You know what? I think I will sit down. Thank you, court, for your time. Ms. Franze, if you want time, you have eight minutes left on the clock. I'm not going to need the eight minutes. I would just like to respond to one point that was made. There is no issue concerning the defendant's expert report. At page 5 of the court order, as the court notes, the plaintiffs conceded that the claims, other than those claims listed in the card report, were either factually unsupported or were mooted. And the court cited the plaintiffs' opposition to summary judgment at pages 14 to 15. So that issue is a non-issue. That was a conceded point. Thank you for the clarification. The case just argued, Pickering v. Pier 1 Imports is submitted.
judges: Hug, Alarcon, McKeown